**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 04, 2018.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 17-52553-CAG |
| | § | |
| CARLOS VEGA-LARA AND | § | |
| AURA CECILIA VEGA, | § | |
| | § | CHAPTER 13 |
| Debtors. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING CHAPTER 13
TRUSTEE'S OBJECTION TO CONFIRMATION OF FIRST AMENDED
CHAPTER 13 PLAN (ECF NO. 12)**

Came on to be considered the above-numbered bankruptcy case, and, in particular, the Chapter 13 Trustee's Objection to Confirmation of Debtors' First Amended Chapter 13 Plan ("Objection") (ECF No. 12).[1] The Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1408(1). This matter is referred to this Court under the District's Standing Order of Reference. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L)(confirmation of plans) in which the Court may enter a final order. The Court notes that, under the Supreme Court's decision

---

[1] "ECF No." denotes electronic court filing number and represents the court filing number where the document appears on the Court's electronic docket sheet.

1

in ***Bullard v. Blue Hills Bank***, 135 S. Ct. 1686 (2015), this Court has the authority to hear and enter orders regarding a debtor's chapter 13 plan; but that an order denying confirmation of a chapter 13 plan is not a final order unless the bankruptcy case is also dismissed. The Court finds that this is a contested matter as defined under Fed. R. Bankr. P. 9014. As such, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The Court took this matter under advisement and finds that the Chapter 13 Trustee's (the "Trustee") Objection should be GRANTED and confirmation of Debtors' First Amended Plan is DENIED.

## BACKGROUND

Debtors filed a chapter 13 petition for relief on November 3, 2017 (ECF No. 1). *See* 11 U.S.C. § 101 *et seq*. On the same day, Debtors filed their Schedules, Statement of Financial Affairs ("SOFA"), and Chapter 13 Plan (ECF Nos. 1 and 2). Debtors filed their Amended Schedules, SOFA, and First Amended Chapter 13 plan on February 10, 2018. (ECF Nos. 14–17). The Court considered confirmation of the Debtors' First Amended Chapter 13 Plan ("Plan") on February 15, 2018.[2] Pursuant to the District Form Chapter 13 Plan ("District Plan") used in the Western District of Texas, Debtors propose to pay 100% of all of their allowed administrative, secured, and priority claims; and propose to pay 24% of their nonpriority unsecured claims (ECF No. 17, p. 1–2). The proposed Plan payment is $850.00 per month for months 1–4 of the Plan and $925.00 per month for months 5–60 of the Plan. (*Id*. at p. 1).

Trustee filed her Objection on January 5, 2018, in response to the Debtors' Chapter 13 Plan filed on November 3, 2017. Debtors' filed their First Amended Plan on February

---

[2] The Court considered confirmation of this case with two other cases—***In re Aurora San Chez Orozco***, Bankruptcy No. 17-52818-CAG and ***In re Annette Marie Diaz***, Bankruptcy No. 17-52761-CAG—because debtors in those cases filed similar plans.

2

10, 2018, five days before the confirmation hearing. The Court considered the First Amended Plan at the February 15, 2018 confirmation hearing wherein the Trustee made oral objections to the Plan.[3]

The Trustee objected to the Plan because Debtors' counsel struck through Section 4.1 of the District Plan regarding the treatment of tax refunds. (ECF No. 17, p. 2). The Trustee argued that Debtors could not strike through any of the provisions contained in the District Plan. The District Plan contains a non-standard provision that allows a debtor to add additional terms to the District Plan if the non-standard provision is contained in Section 8. In this case, Debtors' provision in Section 8 of the District Plan states that Section 4.1 is stricken and that Debtors' will amortize any annual tax refunds as income in Debtors' Schedule "I". The Trustee objected to the non-standard provision as contrary to what the District Plan requires and contends that Debtors may not pro-rate their tax refunds. The Trustee also objects on the basis that Debtors' Plan is infeasible.

**FINDINGS OF FACT**

Ms. Aura Cecilia Vega testified at the confirmation hearing. The Court admitted a number of exhibits, but Ms. Vega's testimony focused on her tax returns and refunds.[4] Debtor stated that from 2016 through present, she works nine months per year as a teacher's assistant. Debtors' First Amended Chapter 13 Plan pro-rates their refund for 2017 of $5,068.00 in the monthly amount of $423.00 and is indicated on their Schedule I (Statement

---

[3] The Court allowed the Trustee to file her brief in support of her objection to confirmation post-hearing. (ECF No. 20). The discussion regarding the Trustee's objections to confirmation concerns both the Trustee's oral and written objections. Both parties filed further briefing that the Court has considered in its Opinion. (ECF Nos. 23 and 25)

[4] Debtor Exhibit 13 ("D-13") is Debtors' 2015 Form 1040 joint individual tax return indicating that Debtors' received a tax refund of $5,068.00. D-14 is Debtors' 2016 Form 1040 joint individual tax return indicating that Debtors' received a tax refund of $11,049.00. D-15 is Debtors' 2017 Form 1040 joint individual tax return indicating that Debtors' received a tax refund of $5,068.00. A tax preparer prepared Debtors' tax returns.

3

of Income). Debtor expressed confusion as to how her tax refund is pro-rated and allocated on her Schedule I.

Debtor, did, however, explain that she uses her tax refund to pay for expenses associated with her children's private school, spending the refund on clothing and shoes. Debtor testified that notwithstanding her use of the annual tax refund for her children's clothing needs, that she is delinquent on her utility bills (water and electric) and private school tuition for two of her children, and is making additional payments to bring the utility bills and tuition current. Debtor further explained that the tax refund is also used to cure the private tuition delinquency.

## DISTRICT FORM CHAPTER 13 PLAN

Bankruptcy courts have the statutory and rule making authority to propose and use local bankruptcy rules. The United States Supreme Court has "the power to prescribe by general rules the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C.A § 2075 (2018).

Pursuant to Fed. R. Bank. P. 9029, Bankruptcy courts may mandate local rules :

(a) Local bankruptcy rules
   (1) Each district court acting by a majority of its district judges may make and amend rules governing practice and procedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are consistent with--but not duplicative of--Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms. Rule 83 F.R.Civ.P. governs the procedure for making local rules. A district court may authorize the bankruptcy judges of the district, subject to any limitation or condition it may prescribe and the requirements of 83 F.R.Civ.P., to make and amend rules of practice and procedure which are consistent with--but not duplicative of--Acts of Congress and these rules and which do not prohibit or limit the use of the Official Forms. Local rules shall conform to any uniform numbering system prescribed by the Judicial Conference of the United States.

4

> (2) A local rule imposing a requirement of form shall not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement.
>
> (b) Procedure when there is no controlling law. A judge may regulate practice in any manner consistent with federal law, these rules, Official Forms, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, Official Forms, or the local rules of the district unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

Under Fed. R. Bankr. P. 9029(a), bankruptcy courts may require local rules of bankruptcy procedure. Prior to this Court's implementation of the District Plan, the Bankruptcy Rules Committee allowed bankruptcy courts to either use a national form chapter 13 plan, or to adopt a form plan that must be used in all divisions within a judicial district.[5] Further, should a bankruptcy court adopt a form chapter 13 plan, it must be formatted in accordance with Fed. R. Bankr. P. 3015.1 and include certain provisions contained in Rule 3015.1:

> Notwithstanding Rule 9029(a)(1), a district may require that a Local Form for a plan filed in a chapter 13 case be used instead of an Official Form adopted for that purpose if the following conditions are satisfied:
> (a) a single Local Form is adopted for the district after public notice and an opportunity for public comment;
> (b) each paragraph is numbered and labeled in boldface type with a heading stating the general subject matter of the paragraph;
> (c) the Local Form includes an initial paragraph for the debtor to indicate that the plan does or does not:
>     (1) contain any nonstandard provision;
>     (2) limit the amount of a secured claim based on a valuation of the collateral for the claim; or
>     (3) avoid a security interest or lien;
> (d) the Local Form contains separate paragraphs for:
>     (1) curing any default and maintaining payments on a claim secured by the debtor's principal residence;
>     (2) paying a domestic-support obligation;

---

[5] The 2017 Advisory Committee Notes to Rule 3015.1 state:
> This rule is new. It sets out features required for all Local Forms for plans in chapter 13 cases. If a Local Form does not comply with this rule, it may not be used in lieu of the Official Chapter 13 Plan Form. See Rule 3015(c).
> Under the rule only one Local Form may be adopted in a district. The rule does not specify the method of adoption, but it does require that adoption of a Local Form be preceded by a public notice and comment period.

5

  (3) paying a claim described in the final paragraph of § 1325(a) of the Bankruptcy Code; and
  (4) surrendering property that secures a claim with a request that the stay under §§ 362(a) and 1301(a) be terminated as to the surrendered collateral; and
 (e) the Local Form contains a final paragraph for:
  (1) the placement of nonstandard provisions, as defined in Rule 3015(c), along with a statement that any nonstandard provision placed elsewhere in the plan is void; and
  (2) certification by the debtor's attorney or by an unrepresented debtor that the plan contains no nonstandard provision other than those set out in the final paragraph.

Pursuant to Rule 3015.1, this District issued its Consolidated Standing Order for the Adoption of a District Form Chapter 13 Plan on October 16, 2017, adopting a form chapter 13 plan to be used throughout the Western District of Texas. (Order #17-02). The District Form Chapter 13 Plan is attached to the Court's Standing Order and went into effect on November 1, 2017.

Two provisions of the District Plan are at issue in this case, Sections 4.1 and 8:

### 4. Tax Refunds and Annual Tax Returns

4.1 Tax Refunds.

All tax refunds received by Debtor (or either Debtor if a joint case) while the chapter 13 case is pending shall be allocated as set forth below:

1) The total amount of the aggregate tax refund(s) received for any tax period that exceeds $2,000.00 shall, upon receipt, be paid and turned over to the Trustee as additional disposable income and such amount shall increase the base amount of the Plan. The Plan shall be deemed modified accordingly, and the Trustee will file a notice of plan modification within 21 days of receipt of the tax refund;
2) This $2,000.00 annual limit shall apply to both joint-debtor and single-debtor cases;
3) The $2,000.00 otherwise retained by Debtor must first be applied to any Plan arrearages;
4) Notwithstanding subparagraph (1) above, Debtor may file a notice to retain the portion of the tax refund otherwise payable to the Plan under subparagraph (1) with twenty-one (21) day negative notice as set forth in Local Rule 9014(a) if, at the time of receipt of a refund, Debtor's Plan provides for the payment of 100% of allowed general unsecured claims within the term of this Plan. If the Trustee does not object within the twenty-one (21) day negative notice period, Debtor may retain that portion of the tax refund.

6

The Trustee is hereby authorized to endorse a tax refund check if the check is made payable to Debtor.

8. Nonstandard Plan Provisions

Nonstandard Plan Provisions.

The following Plan provisions will be effective only if there is a check in the box in Section 1.3 of the Plan.

Failure to place any nonstandard provision in this section results in the nonstandard provision being void.

Debtors struck through Section 4.1 of the District Plan and included the following language in Section 8: "Section '4.1 Tax refunds' is stricken. Debtors' projected tax refund is amortized and treated as income on schedule I."

**PARTIES' CONTENTIONS**

Debtors assert that the District Plan violates the Bankruptcy Code and Rules. Debtors believe that they should be able to pro-rate their future tax refunds on an annual basis by allocating 1/12 of the annual tax refund as income on Debtors' Schedule I. Debtors argue that the Court cannot require Debtors to turn over any tax refund in excess of

7

$2,000.00 because Schedule I (Official Form 106I, Part 2) requires Debtors pro-rate their annual tax refund by dividing the tax refund by 1/12 and including it on Schedule I. Further, Debtors argue that requiring Debtors to turnover tax refunds that exceed $2,000.00 results in capturing non-disposable income instead of disposable income, and, as such, contravenes § 1325. Debtors further assert that Section 4.1 of the District Plan, which conditions Debtors' retention of a tax refund if only certain requirements are met, violates the Bankruptcy Code.

Trustee argues that Fed. R. Bankr. P. 3015.1 allows a court to use a chapter 13 form plan and that Debtors may not deviate or alter the approved form plan. Further, Trustee argues that tax refunds are disposable income under § 1325(b) and must be turned over to the Trustee. Trustee maintains that allowing Debtors to keep $2,000.00 per year is for unexpected expenses that arise during the year. Trustee notes that the Official Form Plan requires debtors to account for tax refunds on the form. Trustee asserts that pro-rating Debtors' tax refund is not permitted under the District Plan and is required under the Bankruptcy Code. Trustee states that the instructions to Schedule I do not require that tax refunds be pro-rated per month.

## CONCLUSIONS OF LAW

Debtors' First Amended Plan and Trustee's objection require the Court to analyze a number of issues involving the Court's adoption of a District Plan. Fed. R. Bankr. P. 3015.1 is clear that a District may require a local form plan be used in a chapter 13 case in place of the Official Form. This Court adopted a District Plan in consultation with the chapter 13 trustees in this District and allowed the bar and any interested parties the opportunity to comment and object to the District Plan. The Court considered all comments and objections before adopting a District Plan and concluded that it was in the best interest

of the Court and its constituents to use a District Plan as opposed to Official Form Plan. This Court stated in its Consolidated Standing Order for the Adoption of a District Form Chapter 13 Plan on October 16, 2017, that a form chapter 13 plan be used throughout the Western District of Texas. (Order #17-02). The District Form Chapter 13 Plan went into effect on November 1, 2017. The Court concluded that the adoption of a District Plan is necessary for the efficient and orderly administration of Chapter 13 cases.[6]

Fed. R. Bankr. P. 9009 states that the Judicial Conference of the United States prescribes the Official Forms that shall be used in federal courts without alteration. The Trustee argues that the inclusion of the language striking Section 4.1 of the Plan and replacing it with language in Section 8 nonstandard provisions impermissibly alters the District Plan. Debtors argue that because the District Plan includes a standard provision (Section 4.1) that is contrary to the Bankruptcy Code and Rules, Debtors may strike through the provision. Debtors also argue that because 11 U.S.C. § 1321 states that "[t]he debtor shall file a plan[,]" the Bankruptcy Code authorizes only a debtor to propose the form and terms of a chapter 13 plan. The Court disagrees.

As an initial matter, the Federal Rules of Bankruptcy Procedure provide that a bankruptcy court may use a district form chapter 13 plan. Allowing any debtor the ability to modify the form or terms of the District Plan would render its use meaningless. The purpose of Fed. R. Bankr. P. 3015.1 was to establish an Official Form of chapter 13 plan so that creditors and litigants could rely upon the same chapter 13 plan being used throughout the country without regard to variances in local practice or rules. Further, to

---

[6] *See In re McIntosh*, 491 B.R. 905, 910 (8th Cir. BAP 2013) ("The adoption of a uniform plan helps promote efficiency and assist the court in carrying out its duty of ensuring a proposed plan satisfies the requirements of the Bankruptcy Code."); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) (stating that § 1325(a) requires bankruptcy courts to correct a defect in a debtor's proposed plan even if no creditor raises the issue).

9

accommodate a number of bankruptcy courts and judges who took issue with Official Form Plan, Rule 3015.1 provides in the alternative that a bankruptcy court can adopt a district plan. This was the compromise reached between the Rules Committee and the bankruptcy judges. The court in *In re Solitro*, 382 B.R. 150, 152 (Bankr. D. Mass. 2008) correctly noted the rationale behind district form plans:

> Using a uniform plan permits the Chapter 13 trustees and attorneys for creditors frequently appearing to review the plans more quickly and efficiently. It also enables debtors' attorneys to prepare plans more quickly and efficiently. Uniformity helps to control the costs of pursuing a chapter 13 case through confirmation and prevents chapter 13 plans from taking on the time and expense associated with chapter 11. Chapter 13 was intended as a special vehicle available to qualifying individuals to use so they would not have to bear the expense of chapter 11. Even if additional provisions do nothing more than restate parties rights under the law, including Bankruptcy Code and Rules, they thwart the goal of providing individuals with a streamlined method for reorganizing their debts.

Section 1321 states that "[t]he debtor shall file a plan." The Court recognizes that a chapter 13 debtor has the exclusive right to file a plan. *In re Euler*, 251 B.R. 740, 745 (Bankr. M.D. Fla. 2000)(citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 143 (1977), U.S. Code Cong. & Admin. News 1977 p. 5963; S. Rep. No. 989, 95th Cong. 2d Sess. 141 (1978), U.S. Code Cong. & Admin. News 1977 p. 5787; *Collier on Bankruptcy* (15th ed. Rev.), ¶ 1321.01 at 1321-2)). The exclusive right to file a chapter 13 plan, however, does not mean that a chapter 13 debtor is the only party who can determine the form of a chapter 13 plan. The distinction between *filing* a chapter 13 plan and *determining the form* of a chapter 13 plan is captured in Rule 3015(b) (setting deadlines for a debtor to file a plan and (c) (requiring debtor to use either an Official Form or Local Form for a plan). Moreover, as discussed herein, the Federal Rules of Bankruptcy Procedure provide that bankruptcy courts may impose both local rules and a form plan. Under Debtors' argument, any debtor could propose a chapter 13 plan in any form the debtor wanted, thereby creating an

administrative nightmare for the court and the litigants in reviewing every provision of every plan filed, thereby increasing the cost of chapter 13 and significantly reducing efficiency in the process.[7] The Court finds Debtors' argument unavailing.

The crux of Debtors' argument relates to the tax refund language in Section 4.1 that allows a debtor without any interference from the Court, Trustee, or creditors, the right to retain the first $2,000.00 of debtor's annual tax refund. The purpose of this provision was to give all chapter 13 debtors the unfettered right to retain up to $2,000.00 of any annual tax refund a debtor (or debtors) receives to assist a debtor with paying for unexpected expenses that invariably occur in chapter 13 cases. In addition, the Court recognized that many chapter 13 budgets as proposed are tight in that a debtor has little room to pay an unanticipated expense without the availability of excess funds. As such, this Court determined that to increase the likelihood that a chapter 13 plan will be successful; allowing a debtor to keep some of the debtor's tax refund enhances the prospect of a debtor completing a chapter 13 plan.

As the Debtors note, Section 4.1 provides how this Court treats tax refunds. Any tax refund in excess of $2,000.00 in a case in which debtors have not proposed a 100% payment to nonpriority unsecured creditors must be provided to the chapter 13 trustee because this Court finds that tax refunds are disposable income. Debtors maintain that tax refunds are not disposable income under § 1325(b)(2).[8] This Court has held otherwise. *See*

---

[7] *See **In re Sperry***, 562 B.R. 1, 5 (Bankr. D. Mass. 2016) ("Form plans promote ease and efficiency for debtors' attorneys in preparing plans and for creditors and courts in reviewing them. Standardization helps reduce the costs of chapter 13 relief.") (citation omitted).

[8] Section 1325(b)(2) defines disposable income:
> [T]he term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

*In re Pautin*, 521 B.R. 754, 763 n. 9 (Bankr. W.D. Tex. 2014) (noting that several courts in the Fifth Circuit have held that, in a chapter 13 case, tax refunds are property of the estate and the debtor must turn over tax refunds to the chapter 13 trustee).[9] Section 4.1 is consistent with this Court's view that tax refunds are disposable income under § 1325(b)(2) and must be turned over to the Trustee.[10]

Debtors also argue that the instructions to Schedule I require Debtors to account for annual tax refunds as monthly income. The instructions for Official Form 106I, Part 2 (Schedule I) states:

> In Part 2, give details about the monthly income you currently expect to receive. Show all totals as monthly payments, even if income is not received

---

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

    (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

[9] One court reasoned:

> Regardless, post-petition, "projected," or "future" tax refunds have been held by courts in many Circuits to fall within the disposable income category. *In re Michaud*, 399 B.R. 365, 371 (Bankr.D.N.H.2008); *In re Jones*, 301 B.R. 840 (Bankr.E.D.Mich.2003); *In re Barbutes*, 436 B.R. 518 (Bankr.M.D.Tenn.2010); *In re Cleaver*, 426 B.R. 390 (Bankr.D.N.M.2010); *In re Skougard*, 438 B.R. 738 (Bankr.D.Utah 2010); *In re Abner*, 234 B.R. 825 (Bankr.M.D.Ala.1999); *In re Kruse*, 406 B.R. 833 (Bankr.N.D.Iowa 2009); *In re Mullen*, 369 B.R. 25 (Bankr.D.Or.2007); *In re LaPlana*, 363 B.R. 259 (Bankr.M.D.Fla.2007); *In re Harchar*, 694 F.3d 639 (6th Cir.2012); *In re Murchek*, 479 B.R. 521 (Bankr.N.D.Iowa 2012). The logic follows that since most wage-earning chapter 13 debtors anticipate annual tax refunds, a promise to pay tax refunds received during projected years of the plan to the trustee is necessary for confirmation of a chapter 13 plan. 11 U.S.C.A. § 1325(b)(1)(B); *In re McElroy*, 410 B.R. 845 (Bankr.N.D.Iowa 2008). The policy for including tax refunds associated with debtors' post-petition income in the chapter 13 plan is to deter debtors from overstating their tax withholding and thus to prevent destabilization of the pillars of the bankruptcy code. *In re Diaz*, 459 B.R. 86 (Bankr.C.D.Cal.2011).

*In re Ramos*, 494 B.R. 181, 186 (Bankr. D. Puerto Rico 2013).

[10] Debtors maintain that the District Plan's requirement that Debtors turn over to the Trustee tax refunds in excess of $2,000.00 (unless the plan proposes to pay all creditors) violates the Bankruptcy Code is incorrect because the tax refunds are disposable income that must be provided to the Trustee. *See* 11 U.S.C.A § 1325(b)(1)(B).

>in monthly payments. One easy way to calculate how much income per month is to total the payments earned in a year, then divide by 12 to get a monthly figure. For example, if you are paid seasonally, you would simply divide the amount you expect to earn in a year by 12 to get the monthly amount.

Instructions: Bankruptcy Forms for Individuals, p. 26 (2017), http://www.uscourts.gov/sites/default/files/instructions_individuals_0.pdf. The Court notes that despite the Schedule I instructions, the accompanying national Official Form 113 provides Debtors with the ability to determine how their income tax refunds will be treated under a plan, which could also conceivably contradict the instructions to Schedule I. See Chapter 13 Plan, p. 2, http://www.uscourts.gov/forms/individual-debtors/chapter-13-plan (allowing debtors to decide whether a debtor will (1) "retain any income tax refunds received during the plan term"; (2) "supply the trustee with a copy of each income tax return filed during the plan term within 14 days of filing the return and will turn over to the trustee all income tax refunds received during the term plan"; or (3) propose a different treatment of income tax refunds). Accordingly, the Court is not persuaded Debtors' argument.

Debtors note that at least two courts have similarly found that a chapter 13 trustee cannot require a debtor to turn over a tax refund to a trustee where the debtor has amortized a tax refund on a monthly basis in Schedule I. These courts have both held that a debtor must, according to the Bankruptcy Code and instructions to the Official Forms, account for tax refunds as income on Schedule I. *See* **In re Blake**, 565 B.R. 871, 876 (Bankr. N.D. Ill. 2017) (noting the difference between a debtor retaining a tax refund for over withholding taxes as opposed to a debtor receiving a tax refund based on tax credits), *aff'd*, **Marshall v. Blake,** 885 F.3d 1065 (7th Cir. 2018); **In re Morales**, 563 B.R. 867, 872 (Bankr. N.D. Ill. 2017) ("[i]f debtors account for their expected income and tax expense correctly at the time of confirmation, tax refunds need not be paid as additional plan payments."). **Morales**

13

and *Blake* do state that a debtor must account for a tax refund derived from tax credits as income on Schedule I. *Morales*, 563 B.R. at 867; *Blake*, 565 B.R. at 877.

These cases have limited application to the case at hand. As the Trustee correctly notes in her letter brief to the Court, the *Blake* and *Morales* decisions were issued prior to the bankruptcy court in that district adopting a national form or district chapter 13 plan. (ECF No. 25, p. 1). The governing plan when the *Blake* and *Morales* decisions were issued did not have a provision regarding the allocation of tax refunds. (*Id*. at 2; Exhibit "C"). As such, the bankruptcy court in those cases was free to determine how tax refunds would be treated. Further, after the *Blake* and *Morales* decisions, the Bankruptcy Court for the Northern District of Illinois did adopt the Official Form Plan. (*Id*.; Exhibits "A" and "B" – Northern District of Illinois Chapter 13 Plan) (Official Form 113). As previously noted, Section 2.3 of the Official Form 113 requires a debtor to identify how tax refunds will be treated. The Court recognizes that the Seventh Circuit did affirm *Blake*, noting that the pro-rating of a tax refund on a monthly basis is permissible under the Bankruptcy Code. *Blake*, 885 F.3d at 1076–83.[11] The Seventh Circuit's decision, however, is based on a practice that predated the *Morales* and *Blake* court's adoption of Official Form 113. Moreover, the *Blake* bankruptcy court decision recognizes that a bankruptcy court may allow a debtor to keep a portion of a tax refund. 565 B.R. at 877 (finding that there is nothing improper about allowing a debtor to retain part of a tax refund and that is a standard practice in many jurisdictions) (citations omitted).

Debtors also argued that certain payments received for dependent adult children are excludable from a debtor's disposable income. *See e.g. In re Adinolf*, 543 B.R. 612 (9th

---

[11] The Seventh Circuit noted that the debtor in *Blake* lives in subsidized housing and receives earned income tax credits. *Id*. at 1069. The Debtors in this case received tax refunds because of over withholding their taxes.

BAP 2016); ***In re Hite***, 576 B.R. 451 (Bankr. W.D. Va. 2016) (finding that subsistence payments for dependent adult children are not included as income under 11 U.S.C. § 101(10A)). The Court was not presented any evidence that the children in this case are dependent adult children. As such, the issue of dependent adult income is not implicated or applicable to Section 4.1.

The Court notes the prior practice in this Court did allow debtors to account for their tax refunds as monthly income wherein the annual tax refund was listed as 1/12 of monthly income on Schedule I. That practice ceased when the Court adopted a District Plan. In doing so, the Court is not implementing anything contrary to law.

Finally, based on the testimony of Ms. Vega, it is clear that Debtors' Plan is not feasible because Debtors are delinquent on utility and private school payments. Debtors are also using their tax refund to cure these ongoing expenses without Court permission. The Court agrees with the Trustee that the Debtors should amend their withholding exemptions to have more monthly income.

## CONCLUSION

The Court will grant the Trustee's Objection to the Debtors' Chapter 13 Plan and deny confirmation of Debtors' First Amended Plan. Debtors have fourteen (14) days from entry of this Memorandum Opinion and Order to propose a new Chapter 13 Plan or the case shall be dismissed.

IT IS THEREFORE ORDERED that the Trustee's Objection to Confirmation of Chapter 13 Plan is GRANTED.

IT IS FURTHER ORDREED that confirmation of Debtors' First Amended Plan is DENIED.

IT IS FURTHER ORDERED that Debtors have fourteen (14) days from entry of

this Memorandum Opinion and Order to propose a new chapter 13 plan or the case shall be dismissed.

All other relief is DENIED.

# # #